NEW-YORK,
October, 1818.

SANDS
v.
GELSTON.

</div>

<div align="center">

Judgment Reversed.

</div>

---

## SANDS *against* GELSTON.

THIS was an action of *assumpsit.* The defendant pleaded *non assumpsit,* and *actio non accrevit infra sex annos.* The plaintiff replied, that the action did accrue within six years. The cause was tried before Mr. J. *Spencer,* at the *New-York* sittings, in *April,* 1817.

The plaintiff was formerly collector of the customs, of the port of *New-York,* was removed in *July,* 1801, and was succeeded by the defendant. The plaintiff had, previously to his removal from office, caused two vessels, the ship *Huron,* and the schooner *Two Friends,* to be seised for a violation of the registry act of the *United States ;* and after the plaintiff's removal they were condemned, and the amount of the forfeitures was paid over to the defendant. The plaintiff claimed one third of the moiety of these forfeitures.

At the time of his removal, the plaintiff delivered over to the defendant a number of bonds which had been taken for duties, amounting to 3,254,773 dollars and 24 cents. Of these bonds 3,113,101 dollars and 42 cents, were paid to the defendant, on or before the 30th of *June,* 1802, at which time an act of Congress allowing the collector a salary, instead of a commission of one fourth per cent, formerly received on moneys collected by him, went into operation. The plaintiff, in *July* and *September,* 1801, paid over to the

*Where the defendant admits that he has received the money, which the plaintiff claims, but denies the validity of the claim, such acknowledgment is not evidence of a new promise so as to take the case out of the statute of limitations.*

*Where the defendant says, that if the plaintiff has a claim, either in law or equity, he will compromise the business, or submit it to arbitration, but, at the same time, denies that he has any claim either at law or equity; this is not sufficient to take the case out of the statute.*

NEW-YORK,
October, 1818.

SANDS
v.
GELSTON.

defendant large sums in cash, being money received by him for duties, amounting to 52,168 dollars, and 93 cents, without making any deduction for commissions. The plaintiff claimed, in this action, one fourth per cent. commission, on the amount of the bonds which he had delivered to the defendant, and which the defendant had collected prior to the 30th *June*, 1802, and also a commission of one fourth per cent. on the money paid over by him to the defendant.

At the trial, several letters between the parties were read. On the 23d of *March*, 1816, the plaintiff wrote to the defendant respecting his claim for forfeitures, proposing a reference; and the defendant, in his answer of the 29th of the same month, refers to a compromise that had been made between the executors of Mr. *Osgood*, formerly naval officer, and Mr. *Ferguson*, his successor, and Mr. *Schenck*, formerly surveyor, and Mr. *Haff*, his successor, by which the proceeds of condemnations prior to the death of Mr. *Osgood*, and the removal of Mr. *Schenck*, were paid to *Osgood's* executors and *Schenck*, and the proceeds of subsequent condemnations were paid to *Ferguson* and *Haff*. The defendant then adds, " if the compromise above stated was to be taken for a rule, you will perceive that you have no claim. But to go further, as you ask my opinion which I now give you, and corroborated by what I consider good authority, Mr. *Ferguson* and Mr. *Haff*, were entitled in law to all the forfeitures they have given up by compromise. Under these circumstances, I must decline both the trouble and expense of a reference."

In a previous letter, of *May* 30th, 1814, the plaintiff wrote to the defendant on the subject of his claim for commissions; to which the defendant, on the 3d of *June*, answered, " I did suppose that in the frequent conversations upon the subject you mention, I had been sufficiently explicit. I never had but one opinion, which is, that the law never contemplated, or intended a payment from me to you. I am yet of that opinion. If I had thought otherwise, I certainly would not have delayed it to the present time."

*Samuel Stevens*, a witness on the part of the plaintiff, testified, that in 1814 and 1815, and, perhaps, in the beginning of 1816, he had, at the request of the plaintiff, seve-

ral conversations with the defendant, in relation to the plaintiff's claims, which the witness offered to compromise, or submit to reference, and that in these conversations the defendant admitted, that he had received the commissions, and that they had not been paid over to the plaintiff, and also, the receipt of the forfeitures : that the defendant frequently said, that if the plaintiff had a claim in law or equity for the forfeitures or commissions, he would submit it to reference, or compromise the business ; but that, in his opinion, the plaintiff had no claim in law or equity for either ; and that if he had, he, the defendant, would not have left the business so long unsettled : that the plaintiff had frequently written and spoken to him on the subject, but he considered that he was not entitled to the forfeitures or the, commissions : and the defendant added, that if the witness would convince him that the plaintiff was entitled, in law or equity, to the forfeitures or commissions, he would submit it. The witness further stated, that in one of their conversations the defendant said, that the plaintiff had been troubling him a long time on the subject of these claims, or used words to that effect. The witness also produced a letter, which he had shown the defendant. This letter was from the comptroller of the Treasury, at *Washington*, to the plaintiff. On presenting this letter to the defendant, the witness claimed of him the performance of what the witness considered a conditional agreement to submit the matter to a reference ; to which the defendant answered, that he had only told the witness, that he would submit the claim, if in his, the defendant's opinion, the plaintiff had an equitable claim, and that his opinion was not altered by the opinion of the Comptroller.

A verdict was taken for the plaintiff, for the sum of 20,349 dollars and 50 cents, subject to the opinion of the court, on the questions, whether the plaintiff was entitled to the forfeitures and commissions, and to what extent ? Whether there had been sufficient evidence to take the case out of the statute of limitations ? and for what period of time the plaintiff was entitled to recover interest ?

NEW-YORK,
October, 1818.

SANDS
v.
GELSTON.

The case was argued by *Hoffman* and *Wells*, for the plaintiff, and by *T. A. Emmet* and *Baldwin*, for the defendant.

As the cause was decided solely on the plea of the statute of limitations, it is unnecessary to state the arguments of the counsel on the other points in the cause, which involved the merits of the plaintiff's claim.

*For the plaintiff*, it was contended, that there had been a sufficient acknowledgment, on the part of the defendant, to take the case out of the statute of limitations. If the jury, from any evidence before them, could infer a promise, the statute would not apply. The slightest admission, or acknowledgment, is sufficient for the purpose. Originally there could be no *express* promise ; but the law raises the promise, on the fact of the defendant having received the money. It is not like reviving an express promise by a new promise. In none of the conversations with the defendant, does he put himself on the statute, or seek its protection ; but insists on his legal right to retain the money. Since the statute of limitations was passed, it has been the object of courts to apply it, according to its great and beneficial purposes ; not to shelter fraud, or encourage injustice. After the lapse of six years, the law presumes the debt to be paid, and gives that presumption to the party as a defence. But the courts have considered the slightest acknowledgment of the existence of the debt sufficient to go to a jury. (2 *Burr.* 1099.) Thus, such expressions as, " Prove it, and I will pay you ;" (1 *Salk.* 29.) " I am ready to account, but nothing is due to you."(*Cowp.* 548.) have been held sufficient to take the case out of the statute. So, here the defendant admitted that he had received the money, but insisted, that he was legally entitled to it. It is saying, in substance, " It is true, I have got the money which you claim ; prove that it belongs to you, and I will pay it." In *Lloyd* v. *Maund*, (2 *Term Rep.* 760.) a letter written by the defendant to the plaintiff's attorney, who had brought the suit, couched in ambiguous terms, neither admitting, nor denying the debt, was left to the jury, to consider whether it did not amount to an acknowledgment of the debt, so as to take it out of the statute. So, in *Rucker* v. *Hannay*, (4 *East's Rep.* 60. in a note,) the

defendant, in an affidavit, on application to the court for leave to plead the statute, stated, that " since the bill of exchange, (on which the action was brought,) became due, (which was more than six years before,) no demand for payment had been made of him," which was left to the jury, who found a verdict for the plaintiff, which the court refused to set aside.

The doctrine is put on its true ground, by this court, in *Sluby* v. *Champlin*, (4 *Johns. Rep.* 461.) that where enough is shown to repel the legal presumption of payment, arising from lapse of time, it takes the case out of the statute. That case, also, obviates another objection, that the new promise must go to the whole demand. In *Dean* v. *Pitts*, (10 *Johns. Rep.* 35.) the defendant admitted that he made the notes on which the action was brought, but said they had been paid ; that he had sent the money to *R.*, and supposed he had paid the plaintiff ; that he would not plead the statute of limitations, unless the money had been paid ; and he thought he could make that appear. The court held this to be a sufficient acknowledgment to take the case out of the statute. So, in *Mosher* v. *Hubbard*, (13 *Johns. Rep.* 510.) the defendant, on being called on to pay an order, after the lapse of six years, said, that he did not recollect that he had paid it, but would examine his papers ; he would write to the witness about it ; but did not. The court held this to be such an admission as would take the case out of the statute. In *Danforth* v. *Culver*, (11 *Johns. Rep.* 146.) the defendant, on being called upon, directly put himself on the statute of limitations, as his defence ; and in *Lawrence* v. *Hopkins*, (13 *Johns. Rep.* 268.) the defendant denied the legality of the demand, and said it was an unjust debt. In the late case of *Johnson* v *Beardslee*,* the promise of one joint debtor to pay a debt barred by the statute, was held sufficient to take the case out of the statute ; and the principle was applied to an acknowledgment by two of the several defendants, in an action against them, as heirs and devisees of a deceased debtor, and which was held sufficient to charge all of them.

Again ; there is a distinction between an express and implied contract, which is recognized in the case of *Pease* v.

* Ante, p. 4.

*Howard.* (14 *Johns. Rep.* 479.) Whenever all the facts from which the law raises the implied promise, are admitted by the defendant, the statute does not apply. This is a case in which the plaintiff must recover on the implied promise. May not an *implied* promise be revived without an express promise to pay ? In *King* v. *Riddle*, (7 *Cranch's Rep.* 168.) where a writing, signed and sealed by the defendant, *reciting* that the plaintiff and others had become his sureties for a debt due *J. F.*, and having become accountable, had paid a debt, and he, the defendant, being desirous to secure them, &c., assigned to *T. V.*, one of the sureties, certain bonds, &c. This *recital* was held to take the case out of the statute. (2 *Saund.* 64. *a.* note.)

*For the defendant*, it was argued, that nothing had been said or done by the defendant amounting to such an acknowledgment or promise as would take the case out of the statute of limitations. The plaintiff is not entitled to the favour shown by the law to a vigilant creditor. From 1801 to 1813, he was perfectly silent ; he slumbered on his rights, and even in his slumbers did not dream of any claim. He again slumbered, until he heard, in 1816, that the Supreme Court of the *United States* had decided, that the representatives of a deceased collector was entitled to a share of the forfeitures incurred in his lifetime. (*Jones* v. *Shore*, 1 *Wheat. Rep.* 462.)

A distinction has been raised between an express and implied promise, as to the operation of the statute. This distinction seems to have been first suggested in *Clarke* v. *Bradshaw*, (3 *Esp. N. P. Rep.* 155.) but is not supported by any adjudged case. Where the law raises an implied promise, it stands *pari ratione*, with an express contract. The statute is to be applied in the same manner, whether the *assumpsit* be express or implied. Why is an action of *assumpsit* within the statute ? Because it is *an action on the case*. Then it must be tested as if it were an action on the case. By the argument of the plaintiff's counsel, facts, or the acknowledgment of facts, must be proved, and then the law raises the implied promise from the facts ; but if there must be an *acknowledgment* of facts for the purpose of rais-

ing the implied promise, there can be no occasion to resort to a *proof* of facts. It is by proof that the facts are to be established, and from the silence of the defendant, his admission is to be inferred. This would be a perversion of the statute. The policy of the statute is to repress and put an end to stale demands; not because the debt is supposed to be paid. The scale of limitations for different actions is graduated altogether on principles of public *policy*. The courts have gone unwarrantable lengths to take cases out of the operation of the statute, and seem now disposed to tread back their steps, and to look at the real object, the sound and beneficial policy of the statute. The true doctrine is now understood to be, that there must be an actual or express promise, or a clear acknowledgment of the debt being due, from which a promise to pay is implied, not from the original contract which is extinguished, and barred by the statute. Thus, in *Clementson* v. *Williams*, (8 *Cranch's Rep.* 72.) where the proof was, that an account stated was presented to one of two partners, who said it was due, but supposed it had been paid by his partner, but that he had not paid it himself, Ch. J. *Marshall* held, that the acknowledgment went only to the original justice of the account, and was not sufficient proof that the debt still remained due, so as to take the case out of the statute; that to have that effect, the acknowledgment must go to the fact, that *the debt is still due*. *Sergeant Williams*, (2 *Saund. Rep.* 64. *a.* note.) after stating that it was formerly held, that a *promise* to pay the debt was alone sufficient to take it out of the statute, (2 *Vent.* 152. 6 *Mod.* 309, 310. *Carth.* 471. 2 *Show.* 126.) but that now the distinction between a *promise* to pay, and a *bare acknowledgment* was no longer regarded, the latter being deemed sufficient to take the case out of the statute, expresses his regret at the doctrine which had crept into the courts; and he adds, that " it might have been as well, if the letter of the statute had been strictly adhered to ; it is an extremely beneficial one, on which, it has been observed, the security of all men depend, and is, therefore, to be favoured ; (2 *Salk.* 421. 422. ;) and though it will, now and then, prevent a man from recovering an honest debt, yet it is his own fault that he has postponed his action so long;

beside which, the permitting of evidence of promises and acknowledgments within the six years, seems to be a dangerous inlet to perjury." The case of *Laurence* v. *Hopkins*, (13 *Johns. Rep.* 288.) where there was an offer to compromise, which was rejected, the defendant declaring that the debt was unjust is a strong case to show that the court requires an admission of the debt being due to take the case out of the statute. This case, and that of *Jones* v. *Shore*, if their principles are adhered to, must put a stop to any further attempts to fritter away the statute.

SPENCER, J. delivered the opinion of the court. Being of the opinion that the plaintiff has failed in maintaining the issue, that the defendant has assumed and promised to pay any part of the demand, within six years, it is unnecessary to consider, whether the plaintiff once had a legal demand or not. To take this case out of the statute, the plaintiff relies on the defendant's letters, written in answer to letters from him, and on the admissions made to Mr. *Stevens*. The defendant admits the receipt of the collector's portion of the forfeitures arising from the condemnation and sale of the *Two Friends* and the *Huron*, vessels seized and libelled before the plaintiff was superseded in his office. The proof is very satisfactory, that the defendant received the commissions on bonds taken by the plaintiff whilst in office ; but the defendant constantly asserted a right to retain what he had received, on his construction of the law. *Stevens'* evidence proves the defendant's admission of the receipt of the moneys claimed, and that the same had not been paid over to the plaintiff ; and that the defendant said, that if the plaintiffs had a claim in law or equity for the forfeitures, or commissions, he would submit it to a reference. or he would compromise the business ; and that, in his opinion, the plaintiff had no claim in law or equity for the commissions or forfeitures ; and that if he had, he, the defendant, would not have left the business so long unsettled. That the plaintiff had frequently written and spoken to him on the subject, but he considered that he was not entitled to the forfeiture, or the commissions ; but if the witness would convince him, that the plaintiff was entitled, in law or equi-

ty, to the forfeitures or commissions, he would submit it.

This is thesubstance and amount of the confessions relied on, to take the case out of the operation of the statute of limitations. Courts of law seem to have been convinced, that the construction which has, sometimes, been adopted, to get rid of the operation of the statute, has been carried too far; and hence, a disposition has been evinced to put a reasonable interpretation upon the language of the party ; an interpretation that shall be consonant to the meaning and intention of the speaker

The statute of limitations is the law of the land, and, as has been frequently observed, was intended as a shield against stale and dormant demands, under the benign supposition, that the party may have lost the evidence necessary to his defence, by the lapse of time. I never could see the difference, as regards the revival of a debt, between one barred by the statute of limitations, and one from which the debtor had been discharged under the bankrupt or insolvent laws. The remedy is equally gone in both cases. The statute of limitations requires all actions on contract to be commenced within six years next after the cause of such action accrued, and not after. The remedy being. suspended after six years, there yet exists a moral duty, on the part of the debtor, to pay the debt ; and, accordingly,-a promise to pay a debt not extinguished, but as to which the remedy is lost, is a valid promise, and may be enforced on the ground of the pre-existing moral duty. There is, then, no substantial difference between a. debt barred by the statute of limitations, and a debt from the payment of which the debtor is exonerated by a discharge under a bankrupt or insolvent act. Both of them rest on the same principle with a debt contracted by an infant not for necessaries ; yet, it is singular, that in neither of the latter cases will the bare acknowledgment, that the debt once existed, and has not been paid, support an action ; an express promise to pay being necessary.

I mention this merely to show, that in the single case of a debt barred by the statute of limitations, courts of law have given a construction which would apply, with equal propriety, to the other cases, and yet have restricted the

rule to the one case, as though the statute of limitations was an odious statute, and to be gotten rid of by construction.

I am bound by authority to consider the acknowledgment of the existence of a debt within six years before the suit was brought, as evidence of a promise to pay the debt. But I insist, that if, at the time of the acknowledgment of the existence of the debt, such acknowledgment is qualified in a way to repel the presumption of a promise to pay, then it will not be evidence of a promise sufficient to revive the debt, and take it out of the statute. In consonance with this distinction, I take it, the cases of *Danforth* v. *Culver*, (11 *Johns. Rep.* 146.) and *Lawrence* v. *Hopkins*, (13 *Johns. Rep.* 288.) were decided in this court. In the first case, we held, that although the defendant acknowledged the execution of the notes, but insisting that they were outlawed, and that he meant to avail himself of the statute, no new promise could be inferred without violating the truth of the case. In the other case, the defendant was sued as one of the makers of a joint and several promissory note; the statute of limitations was pleaded, and it appeared in evidence, that the defendant stated he had lately been sued on a contract made with *Whiting*, (the payer of the note,) and that by the terms of the contract he had never considered himself holden to pay any thing, and that his counsel advised him that the contract could not be enforced at law. We held the evidence insufficient to take the case out of the statute; that there was neither an express, nor an implied promise to pay the debt; on the contrary, that the defendant uniformly considered the demand as unjust from the beginning, and that he was under no obligation to pay it. That to infer a promise to pay, in direct opposition to the defendant's denial of the justice and fairness of the debt, would be trifling with the statute.

We, certainly, did not mean to overrule these cases in *Mosher* v. *Hubbard.* (13 *Johns. Rep.* 512.) The facts in that case were sufficient to be submitted to a jury, and for them to presume, that the defendant not only admitted that the debt was not paid, but that he recognized its existence, as a debt due from him within six years. In the case of *Johnson* v. *Beardslee** and others, we recognize the law to

* *Ante,* p. 4.

be, that the acknowledgment of a debt is evidence sufficient for a jury to presume a new promise; and we add, that we did not intimate, in *Danforth* v. *Culver*, that an acknowledgment of the debt would not have been sufficient, unaccompanied with a protestation against paying it.

To come back to this case; the whole amount of the defendant's admission is this, that the plaintiff had never received what he claimed as a debt; and that, if the defendant believed he had a claim in law, or equity, he would submit the matter to reference, or compromise it; but that, in his opinion, the plaintiff had no such claim; and that he was not entitled to it in law or equity, and, therefore, he would neither submit, nor compromise it.

It would be doing violence to this admission, to say, that there is evidence from which a promise may be inferred, to pay a demand, the justice and equity of which, as well as the defendant's liability to pay it, is utterly denied.

I will briefly review some decisions, which appear to me to place this question in a very clear light. I am not called upon to reconcile all the cases upon this subject. My object is, as far as is possible, to rescue the statute from constructions which go to overthrow it, and to endeavour to place this subject upon rational grounds.

In the case of *Clementson* v. *Williams*, (8 *Cranch*, 72.) Ch. J. *Marshall* says, " decisions on the statute of limitations had gone full as far as they ought, and the court was not inclined to extend them in this case ;" he says, " there is no promise, conditional or unconditional, but a simple acknowledgment ;" " the statute," he adds, " was not enacted to protect persons from claims fictitious in their origin, but from ancient claims, whether well or ill founded, which may have been discharged, but the evidence of discharge may be lost; it is not then sufficient to take the case out of the act, that the claim should be proved, or acknowledged to have been originally just; the acknowledgment must go to the fact that it is still due."

In *Brown* v. *Campbell*, (1 *Sergeant* and *Rawle*, 179.) Ch. J. *Tilghman* says, " But I can never agree that a letter which denies that the defendant ever was liable to the plaintiff's demand, will avoid the act of limitations, merely be-

NEW-YORK, cause it is not denied that payment has not been made."
October, 1818. In *Rowcroft* v. *Lomas*, (4 *Maule* and *Selwyn*, 457.) the

SANDS action was for money lent, and the statute was pleaded;
v.
GELSTON. the plaintiff gave in evidence the defendant's accountable receipt, for 80 pounds, to account for on demand, and proved, that in 1814 the receipt was shown to the defendant, and he was asked if he knew any thing of it, he said he knew all about it, that it was not worth a penny, and he would never pay it. He admitted his signature, and that he never had paid it, and said he never would, and added, besides, it is out of date, and no law should make him pay it. Lord *Ellenborough* held, that the effect of the receipt was destroyed by the lapse of six years; that something more must be proved than the bare acknowledgment by the defendant that the thing is unsatisfied, to give effect to that which is, *per se*, destroyed. He adds, " the cases, indeed, have determined that a debt, the existence of which is extinct, through lapse of time, may be revived by an acknowledgment that it is unsatisfied; but there must first be some acknowledgment that it ever existed."

It is not correct reasoning to contend, that if the defendant admits that the demand made upon him has never been satisfied, that therefore he has revived the debt, and waived the protection of the statute, when, in the same breath, he insists, that the demand is illegal and inequitable. Though, indeed, the defendant may admit, that what the plaintiff claims as a debt has never been paid, if he protests against his liability, it would be an outrage on common sense to infer a promise to pay, in the face of his denial of his liability to pay. On these principles, I rest my opinion, that the defendant is entitled to judgment; and such is the opinion of the court.

<div align="right">Judgment for the defendant. (a)</div>

(a) In an action against the drawer of a foreign bill of exchange, the evidence to take the case out of the statute was, that the defendant said, " if you had presented the protest the same as the rest, it would have been paid; I had their funds in the acceptor's hands." Lord *Ellenborough* was of opinion, that as this was a qualified admission, in which the defendant resisted payment, on an objection which would have exempted him from payment, the law would not, under the circumstances, imply a new promise. (*De La Torre* v. *Barclay* and *Salkeld, Starkie, N. P. Rep.* 7.)