Curia, per Sutherland, J.
The demand of the plaintiff *709 below must be limited to the six years preceding the commencement of his suit. The admission by Clarke that it had been an old custom of his to take four or five shillings more rent than was reserved in the lease, is not sufficient to open all the antecedent accounts between the parties. The conversation commenced by Clarke’s asking Dutcher why he had issued a summons against him ? From which it may be inferred that it was soon after the issuing of the summons, and before the declaration was put in before the justice. He could not then have known that Dutcher sought to recover back any payment made prior to the last six years. It ought clearly to appear in all such cases, that the acknowledgment related to the identical debt or demand which is sought to be recovered upon the strength of it.[1] (Sands v. Gelston, 15 John. Rep. 511.)
*710 This was not a case of open unliquidated mutual accounts. The receipt of July 16th, 1814, settled all accounts between the parties in relation to the rent on lot No. 36, up to September 29th, 1813. If the plaintiff below, upon that settlement, paid by mistake more than he *711 ought to have paid, the error might have been corrected any time within six years, and the excess recovered back, provided the mistake was of a character by which the law 1 *712 did not hold him concluded. But having slept upon his rights until the statute of limitations .has attached, and having failed to show an acknowledgment on the part of *713 the defendant sufficient to take the case out of the statute, no inquiry can now be had into any accounts between the parties in relation to the rent, prior to that settlement.
*It was objected upon the argument, that the opinion of thé court of common pleas in relation to the statute of limitations was not excepted to. It is true that that part of the bill of exceptions which relates to the statute of limitations, after stating the point raised by the counsel to the court, and their decision upon it, omits the usual conclusion, “to which opinion of the said court, the counsel for the said George did then and there except.” But I think we are authorised in considering that omission as matter of accident and mistake, in drawing up or copying the bill of exceptions. The whole matter contained in the bill of exceptions upon that point, would have been irrelevant and impertinent, unless the opinion expressed by the court had in fact been excepted to. We cannot suppose that respect *714 able counsel would thus unnecessarily incumber the record, or that they would seek to impose upon the court, by appearing to state an exception which was not in fact taken.
Where there is any dispute as to the facts which go to prove the making of a new promise, there, whether a sufficient acknowledgment or promise has been made to take the case out of the statute, is a mixed question of law and fact', to be passed upon by the jury. But when the facts are undisputed, it is for the court to determine whether the} take the case out of the statute or not. Here it was not denied that Clarke made the declaration relied upon as evidence of an acknowledgment of the debt. Whether it amounted to a sufficient acknowledgment or not, was an unmixed question of law.
The opinion expressed by the court was erroneous, and properly excepted to.
If the plaintiff’s demand is limited to the period subsequent to the settlement of July I6th, 1814, he has no ground for a recovery. Since that period, there has been no final settlement between the parties. All the receipts have been upon account, except that of October 1st, 1817, given by Walter to Webb for $24,87 which purported to be in full for two years’ rent. Mr. Morrell swears expressly that Mr. Webb had no authority to give a receipt in full; that his instructions to the clerks, of whom Webb was one, were to receive any money *which Mr. Clark’s tenants should pay, and give receipts on account. That receipt, therefore, is to be considered as a receipt on account merely. Now the rent which has fallen due since September 29th, 1813, up to which period it was settled^ by the receipt of July 16th, 1814, and the commencement of this suit, without calculating any interest, exceeds by some dollars the amount paid by the plaintiff. Mr. Morrell states the balance of principal and interest due Mr. Clarke, upon an accurate calculation upon this principle, on the 8th day of January, 1821, when this suit was commenced, to have been $10.73. Whether Mr. Clarke, therefore exacted and received from the plaintiff at any period more rent than was due to him, is
*715 not the question. Whatever he received, he passed to the general credit of the plaintiff; and in this action the inquiry is, has the defendant received more from the- plaintiff for rent than he was entitled to ? The evidence clearly shows that he has not; and the plaintiff below, therefore, is not entitled to recover.
But it was said, upon the argument, that as more than $50 had been paid by the plaintiff to the defendant fer rent within six years, the judgment was supported, whether the opinion expressed by the court as to the statute of limitations was right or wrong. It is undoubtedly true, that a judgment will not be reversed on account of an erroneous opinion expressed, or decision made by the court, where it clearly appears that the error did not or could not have affected the error or the judgment. [1] But this very position implies that we are to look beyond the letter of the exception into the case itself, to ascertain what the effect of the error was. Now it is perfectly clear that if the court had charged the jury that all accounts between the parties prior to the last six years were barred by the statute of limitations, they could not have given a verdict for the plaintiff; for within the last six years he had not paid as much as he owed the defendant; and this point, therefore, properly arises upon this exception.
But although this view of the case, if I am correct in it, is conclusive, it may be well briefly to consider that which, upon the argument, was treated as the main point in the cause: It is embraced in the exception, that the payments made by *the defendant in error, were made voluntarily with a full knowledge of all the facts in the case; and admitting that they exceeded the amourv legally due, and that the statute of limitations was out of the question, the excess could not be recovered back, the mistake being in law and not in fact.
Although there are* a few dicta of eminent judges to the *716 contrary, I consider the current and weight of authorities as' clearly establishing the position, that where money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back upon the ground that the party supposed he was bound in law to pay it, when in truth he was not. [1] He shall not be permitted to allege his ignorance of law; [2] and it shall be considered a voluntary payment.
This position was broadly stated by Buller, J., in Lowry v. Bourdieu, (Dougl. 470,) without any question, or the expression of any doubt or disapprobation by the rest of the judges. Although it is true that that case may have been,-and probably was determined on the ground that the policy upon which the premium had been paid was a gaming policy, that the parties were in pari delicto, and that the law would not aid the plaintiff in recovering back what he had paid under such circumstances ; still it is not to be supposed that Lord Mansfield and Mr. Justice Ashurst would have suffered the dictum to have passed without animadversion, if they had not assented to its correctness
*717 In Knibbs v. Hall, (1 Esp. N. P. Cas. 83,) a tenant was it permitted to recover back from his landlord, or to be allowed by way of set off, a sum of money which he had paid beyond the rent which was actually due from him. The landlord demanded 25 guineas, and threatened him with a distress if he did not pay it. The tenant insisted that he had taken the premises at 20 guineas, and offered to pay that sum; but under the supposition that he could not defend himself against the distress, paid the 25 guineas, and was not permitted to recover back or set off the excess, it being held a voluntary payment. So in Brown v. McKinnally, (1 Esp. N. P. Cas. 279,) and Marriott v. Hampton, (2 Esp. N. P. Cas. 546,) the same principle was recognized.
*In Buller v. Harrison, (Cowp. 555,) the money was paid under a mistake in fact. The assurer, upon a representation that a loss had been sustained by one of the perils covered by the policy, paid the insurance to the agent of the assured. But soon learning that it was a foul loss, in the language of the case, he gave notice to the agent of the fact, and also not to pay over the money. The only question discussed in the case wras, whether in judgment of law the money had been paid over by the agent before he received the notice. The plaintiff’s right to recover against the principal was not questioned.
The case of Bilbie v. Lumley, and others, (2 East, 469,) was also an action by an underwriter, to recover back from the assured ¿TOO, which he had paid upon the policy. The ground on which the action was brought was, that the money had been paid under a mistake, the defendant not having disclosed to the plaintiff, at the time the insurance was effected, a letter relating to the time of the sailing of the ship insured, which it was admitted was material. But it appeared that before the loss was adjusted and the money paid on the policy, all the papers, including the letter in question, were submitted to the plaintiff. The counsel for the plaintiff put his case on the broad ground that it was sufficient to sustain the action, that the money had been paid under a mistake of the law, the plaintiff"not being *718 apprised at the time of the payment, that the concealment of the particular circumstance disclosed in the letter was a defence to any action which might have been brought on the policy. When the case was stated at bar, Lord Ellen-borough would not hear it argued. He said he had never heard of a case in which a party who had paid money to another voluntarily, with a full knowledge of all the facts of the case, had been permitted to recover it back, on account of his ignorance of the law, except the case of Chatfield v. Paxton, (in a note to Bilbie v. Lumley) in which Lord Kenyon, at nisi prius, had dropped an intimation of that sort. Now, upon examination, it will be found that in the case of Chatfield v. Paxton, a majority of the judges put the case upon the ground that the payment had been made by the plaintiff, not with a full knoxoledge *of the facts, but only under a blind suspicion of the case. Lord Elienborough says that it was so doubtful on what point that case turned, that it was not ordered to be reported.
In Stevens v. Lynch, (12 East, 38,) the plaintiff was the indorser, and the defendant the drawer of a bill of exchange. The defence was, that the plaintiff had given time to the acceptor after- his dishonor of the bill. But it appeared that the defendant, with a full knowledge of that fact, said, “ I know I am liable, and if Jones (the acceptor) does not pay it, I will.” The court say the defendant made the promise with a full knowledge of all the circumstances, and cannot now defend himself upon the ground of his ignorance of the law when he made the promise.
The eases of Chatfield v. Paxton, and of Bize v. Dickson, (1 Term Rep. 285,) were cited for the plaintiff upon the argument. But the court said they considered those cases to have proceeded on the mistake of the person paying the money under an ignorance or misapprehension of the facts of the case.
In the late case of Brisbane v. Dacres, (5 Taunt. 144,) this subject was elaborately considered by the court of common pleas, and the principle of Bilbie v. Lumley recognized and adopted. Brisbane was the captain of a frigate belonging to a squadron under the command of Admiral *719 Dacres, the testator of the defendant, upon the Jamaica station; and in obedience to the orders of the admiral, in April, 1808, he received on board his frigate $700,000 belonging to government, and proceeded with the same to Portsmouth» He also received on board between one and two millions of dollars belonging to individuals, to be delivered at the bank of England. The government and individual money Was delivered according to order, and Captain Brisbane received from the government for the freight of the former £850; and from the bank of England, upwards of £7000 for the freight of the latter. He paid over to the admiral one third of the sums thus received, under the belief that he was legally entitled to it; but upon discovering that he was not, he brought this action to recover it back. It was shown to be the usage in the navy, for the captains of vessels carrying public and private treasure, *to pay one third of the freights of the same to the commander of the squadron to which they belonged, though it was admitted that since 1801, the admiral had in such cases no legal claim to any portion of the allowance. But the court held that the money having been paid with a full knowledge of all the circumstances and facts in the case, could not be recovered back because it had been paid under a misapprehension of the law. As to the freight for the money belonging to individuals, it was held that Captain Brisbane had no right to carry it; that the whole of that part of the transaction was illegal; and that the parties being in pari delicto, the law would aid neither. But as to the other portion of the demand, it was put upon the broad ground which I have stated against the opinion of Mr. Justice Chambre. Mr. Justice Gibbs says, where a man demands money of another as a matter of right, and he pays it with a full knowledge of the facts upon which the demand is founded, he never can recover back the sum he has so voluntarily paid. By submitting to the demand* he that pays the money gives it to the person to whom he pays it, and closes the transaction between them. He who receives it has a right to consider it as his without dispute; and it would be most mischievous and unjust, if he who *720 has acquiesced in the right by such voluntary payment should be at liberty at any time within the statute of limitations, to rip up the matter, and recover back the money.
Against these cases and a variety of others in which the same principle is acknowledged with more or less distinctness, there is nothing to oppose but the dictum of De Grey, Ch. J. in Farmer v, Arundel, (2 Black. Rep. 825,) and of Lord Mansfield in Bize v. Dickson, (1 Term. Rep. 285.) The observation of Ch. J. De Grey is, that “When money is paid by one man to another, as a mistake either of fact or of law, or by deceit, an action will lie to recover it back.” But in that'case the action was not sustained, although the money had been paid by the plaintiff under a clear mistake of law. The case, therefore, not only did not call for the dictum, but is in direct hostility with it. The proposition of Lord Mansfield in Bize v. Dickson was, that “ Where money *is paid under a mistake, which there was no ground to claim in conscience, the party may recover it back in an action of assumpsit.” If his lordship meant mistake in fact, the proposition is undoubted; and that he did so mean and express himself, Mr. Justice Gibbs, in his opinion in Brisbane v. Dacres, infers with great force, from the circumstance that Lord Mansfield had six years before, in Lowry v. Bourdieu, heard it said by Mr. Justice Buller, that “ money paid in ignorance of the law could not be recovered back,” and had not dissented from the doctrine; and Buller, justice, sat by him in Bize v. Dickson, and would not have heard the contrary of that doctrine stated without noticing it. The only point to which the attention of the defendant’s counsel, in Bize v. Dickson, seems to have been directed was, whether the case came within the principle of Grove v. Dubois, (1 Term Rep. 112 ;) and the court having expressed an opinion that it did, he abandoned the case, without adverting to the distinction that, in Grove v. Dubois, the broker had been allowed merely to set off his demand, and here he sought to recover back a sum which he had actually paid.
Chief Justice Mansfield in Brisbane v. Dacres, in advert *721 ingto these propositions of Ch. J. De Grey and Lord Mansfield says, “ It certainly is very hard upon a judge, if a rule which he lays down generally, is to be taken up and carried to its full extent. Great caution ought to be used by the court in extending such maxims to cases which the judge who uttered them never had in contemplation.”
If money paid under a mistake of the law, though with a full knowledge of the facts in the case, can be recovered back in all cases where the party to whom it is paid is not in conscience and equity entitled to it, what is the practical distinction between a mistake in fact and mistake in law. A party who has paid money under a mistake in fact, cannot recover it back unless he is equitably entitled to it. The inquiry in every case, therefore, must be, not whether the money was paid under a misapprehension of the law, or in ignorance of the fact, for that is immaterial, but whether the party to whom it was paid can in equity and conscience retain *it. If he cannot; if there was any mistake of any character, he shall refund.
If this, be so, why has this question been so frequently and elaborately discussed, not only in the English but in our own courts ; and not only in the courts of common law, but in courts of equity ? How are the cases of Bilbie v. Lumley, and of Brisbane v. Dacres to be reconciled with this principle ? What ground of conscience or equity had Admiral Dacres for retaining the money paid to him? He had neither incurred hazard nor rendered any labor or service in its transportation. Captain Brisbane was not his servant, nor was the ship which carried it his property. Chief Justice Mansfield, in his solicitude to avoid collision with the dicta of Chief Justice De Grey and Lord Mans field, does indeed suggest a ground of equity for the defendant. He says, “ So far from its being contrary to equum et bonum I think it would be most contrary to equum et bonum if he were obliged to repay it; for see how it is : If the sum be large, it probably alters the habits of his life ; he increases his expenses ; he has spent it over and over again; perhaps he cannot pay it at all, or not without great distress.” If the fact of having expended the *722 money, or of its being inconvenient to repay it, is a sufS cient ground of equity to enable the party who has received it under a mistake of law to retain it, I apprehend that it will practically amount to the same thing as holding that it shall not be recovered back. But with great respect, 1 think his lordship might better have denied those dicta to ■be law, as Lord Ellenborough did in, Bilbie v. Lumlie, than to have sought to evade -them by this gloss.
Chief Justice Marshall thought there was a distinction between a mistake in fact and a mistake in law, when he said in Hunt v. Rousmanier, (8 Wheaton, 215,) “ Although we do not find the naked principle that relief may be granted, -on account of ignorance of law, asserted in the books, we find no case in which it has been decided that plain and acknowledged mistake in law is beyond the reach of equity.” Chancellor -Kent thought such a distinction existed, when -he said in Lyon v. Richmond, (2 John. Ch. Rep. 51,) “ Courts do not undertake to relieve parties from their acts and deeds *fairly done on a full knowledge of facts, though1 under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law; there is no other principle which is safe or practicable in the common intercourse of mankind.” The .principle upon which courts refuse to relieve against mistakes in law is, that in the judgment of law there is no mistake ; every man being held, for the wisest reason, to be cognizant of the law. The act, therefore, against which the party seeks relief, is his own voluntary act, and he must abide by it. This principle steers entirely clear of the conscience or equity of the transaction.
In this case, therefore, the rent having been reserved in sterling money, and its value in our currency being fixed by statute,' and therefore a question of law, if the plaintiff) on settling his rent at the rate of £4 14s. currency for £2 10s. sterling, acted under an erroneous impression that that ■ was its legal value, he cannot now recover back the excess. The rent was demanded by the landlord as his right. By submitting to the demand, as Mr. Justice Gibbs expressed it, he gives the money to the party to whom he pays it *723 and closes the transaction for ever. The judgment of the common pleas must be reversed. '
Judgment of reversal.

In New York in’1849 it was enacted, that no acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the statute of limitations, unless the same be contained in some writing signed by the party to be charged thereby; but this enactment does not alter the effect of any payment of principal or interest, § 110 N. Y. Code. In Wadsworth v. Thomas, 7 Barb. 445, it was held that a promise, made since the Code took effect, to pay a debt based by the statute of limitations, before the Code went into operation, will not revive the cause of action, unless such promise be in writing, subscribed by the promisors, and it was held that this interpretation of this section of the Code did not give to it a retrospective effect, so as to take away any vested right of the creditor. It would have been otherwise, had the promise been made before the Code went into effect.
Previous to this section of the New York Code, a debt might be taken out of the statute of limitations, by an express verbal promise to pay the same, or by a clear recognition of the present existence of the demand. Stafford v. Richardson, 15 Wen. 306. Allen v. Webster, id. 288. See also, Van Keeren v. Parmelee, 2 Comst. 513. Bell v. Morrison, 1 Peters 362. Rosevelt v. Mark, 6 John. Ch. R. 290. Tompkins v. Brown, 1 Denio 247. Sands v. Gelston, 15 John. 511. Cocks v. Weeks, 7 Hill 46. Watkins v. Stephens, 4 Barb. S. C. R. 170. Stafford v. Bryant, 2 Page 45. Murray v. Coster, 20 John. 570. See also Wetzell v. Bussard, 11 Wheat. 310. Clemenston v. Williams, 8 Crunch 72.
The same rule was recognised by Mr. Justice Story in Bell v. Morrison, 1 Peters 351. In all those cases this principle was laid down, that there must be an unqualified admission that the debt is due, and that the party is willing to pay it. Such an admission however was considered sufficient to raise an implied promise of payment, although no express promise Was proved. See Van Keeren v. Parmelee, 2 Comst. 529. If the aclmowledg *710 ment was qualified in a way to repel the presumption of a promise to pay, it was of no avail. Sands v. Gelston, 15 John. 520. Bradly v. Field, 3 Wen. 273. Nor was an acknowledgment of the original justice of the demand sufficient without recognising the present existence of the debt. See per Mr. Justice Mareyiu Purdy v. Austin, 3 Wen. 189. Allen v. Webster, 15 id. 288. A promise to the holder of a chose in action, sufficient to take the case out of the statute of limitations, was available in an action by a subsequent holder. Soulden v. Van Rensselaer, 9 Wen. 293. In Read v. Williams, 2 Wash. C. C. R. 5,14, Mr. Justice Washington charged the jury, that, “ Anything tending to negative a promise, must be considered as qualifying every other expression; and that as the whole must be taken together, it amounted to a refusal to pay, which can never be construed into a promise to pay.” See further Angel on Limitations, p. 245, j 25.
In England, if a debtor simply acknowledged an old debt, the law implied from that simple acknowledgment a promise to pay. Phillips v. Phillips, 3 Hare, 300. 25 English, Ch. R. 300. But now, by 9 Geo. 4, c. 14, s. 1, in actions of debt, or upon the case, grounded upon any simple contract, no acknowledgment or promise by words only, shall be deemed sufficient evidence of a new or continuing contract, whereby to take any case out of the operation of the enactments of the 21 Jac. 1, c. 16, or the 10 Car. 1, sess. 2, c. 6, (Irish act) or to deprive any party of the benefit thereof, unless such acknowledgment or promise shall be made or contained by or in some writing, to be signed by the party chargeable thereby; and where there shall he two or more joint contractors, or executors or administrators of any contractor, no such joint contractor, executor or administrator, shall lose the benefit of said enactments, or either of them, so as to be chargeable in respect, or by reason only, of any written acknowledgment or promise, made and signed by any other or others of them: provided nothing therein contained shall alter, or take away, or lessen the effect of any payment of any principal or interest made by any person, whatsoever; provided also, that-in actions to be commenced against two or more joint contractors, or executors or administrators, if it shall appear at the trial or otherwise that the plaintiff, though barred by either of said acts or that act, as one or more of such joint contractors, or executors, or administrators, shall nevertheless he entitled to recover against any other or others of the defendants, by virtue of a new acknowledgment, or promise, or otherwise, judgment may be given, and costs allowed for the plaintiff, as to such defendant or other defendants against whom he shall recover, and for the other defendant or other defendants against the plaintiff. See also 9 Geo. 4, ch. 14, sess. 2, 3,4. This first enactment is so analogous to § 110 of the New York Code, that I have copied it *711 entire. The decisions under it in England, will no doubt help materially in construing § 110 of the N. Y. Code.

Construction of the act.

The first clause of this enactment, it has been held, has a retrospective operation and applies to a parol acknowledgment made before the provisions of the statutes went into effect, although the acknowledgment was made before the passing of the act. Towler «. Chatterton, 3 M. & 3?. 619. 6 Bingo, 258. Ansell v. Ansell, 3 Carr. & P. 563. Amner v. Cattle, 2 M. & P. 367. But see per Rolfe, Moore v. Burden, 12 Jur. 138—Exch. And the cause was at issue before that time. Hilliard v. Lenard, M. & M. 297. In Ansell «. Ansell, the only evidence to take the case out of the statute of lirilitations, was parol acknowledgment, and it was submitted by the defen ■ dant that, since the statute 9 Geo, 4, such an acknowledgment was not sufficient; and for the plaintiff it was insisted, that as the action was commenced before the 1st. of January, 1829, when the act came into operation, its provisions did not apply. Lord Chief Justice Tenteeden, was of opinion that the words of the act had relation to the time of trial.
The statute says the promise ‘‘must be signed by the party chargeable thereby.” Therefore, an acknowledgment written and signed by another person, at the request of the promisor, is not sufficient. Hyde v. Johnson, 3 Scott, 289 ; 2 Bing. N. C. 776; 3 Hodges, 92. Money deposited with a banker, is money lent, with a superadded obligation, that it is to be paid when called for; and consequently if not noticed for six years it will be affected by the statute of limitations. Per curiam, dubitante Pollock, C. 3 Pott v. Cleg, 16 M. & W. 312; 11 Jur. 289 ; 16 Law J. Exch. 210.

What a sufficient acknowledgment.

The acknowledgmentmust amount to a distinct promise to pay, or a distinct acknowledgment that the sum is due. Bucket l>. Church, 9 Carr. & P. 209. And the construction of the acknowledgment if doubtful is for the court; if it be explained by extrinsic facts, they are for the consideration of the jury, Morrell v. Frith, 3 Mee. & W. 402. 8 Car. & P. 246. 1 Horn. & F. 100. 2 Jur. 619.
If a defendant, by letter, admit a balance due, without saying the amount, it is sufficient. Dickenson v. Hatfield, 5 Carr. & P. 46; 1 M. & Rob. 141. But if the whole evidence be merely proof of the writing and no proof of the original cause of action, the plaintiff can only recover nominal damages, id. “ I beg to say I cannot comply with your request. The best way for you would be to send me the bill you hold, and draw another for the balance of your money £30 9s. 9d.”—Held a sufficient acknowledgment of that sum being due. Dobbs «. Humphries 10 Bing, 446. 4 M. & Scott, 285. A bankrupt, wrote a letter to B. in which he alluded to a debt of £98, and stated, inter alia, as follows :—“ By the end of next month I shall have my bankers’ *712 account here, and I shall remit the sum due to you in a draft on them.” Held a sufficient promise to answer the statute of limitations and a plea of bankruptcy Long v. Mackenzie, 4 Carr. & P. 463. A letter from the defendant to the plaintiff wherein he says:—“ I can never be happy until I have not only paid you, but all to whom I owe money,” and “ your account is quite correct; and oh 1 that I were going to enclose you the amount of it.” Held that this was evidence to go to the jury of an acknowledgment of the debt. Bodson v. Mackey, 4 Nev. & M. 327. Ad. & E. 225 N. ' Quere. Whether proof of such letters, together with proof of a bill drawn more than six years ago, by the plaintiff on the defendant, and accepted, would entitle the plaintiff to recover nominal damages ? id. See also Bird v. Gammon, 5 Scott, 213. 3 Bing. N. C. 883. 3 Hodges 224.
So, the following letter was held to contain a sufficient acknowledgment— “ I do not desire that you, or any other of my creditors should lose what I owe them. As you have mentioned the limitation act, I answer at once, that(I am ready to put it out of my power, to take advantage of that act, and will immediately give you my note for whatever amount is due to you. To pay you now, or within a year, I am utterly unable. It is of course indispensable that the exact;sum I owe you be fixed, whether you accept my note or not. I have clearly shown you, in a former letter, that your account is not in accordance with the estimate, upon which you agreed to do the work. If you cannot produce the estimate,-it is certainly reasonable that some (and considerable) deduction should be made. You wifi perhaps say what deduction you are prepared to make, and I shall be glad if it be such as will allow me, with justice to my other creditors, to give you my note for the amount, or, if possible, to borrow it from a friend, which I have the hope of doing, and wipe the account entirely firom your books. I am fully sensible and thankful for the forbearance you have shown, but I cannot move a step in the way to give you satisfaction, and do justice to my other creditors, until -the sum actually due you be ascertained.” Gardner «. McMahon, 6 Jur. 712, Q,. B. So also—“ As to the sum of £100, which you lent me, whether stock or money I do not know, I always believed it had been paid almost immediately by C. S. as he had money of mine.” This acknowledgment, on C. S. negativing the fact of payment, was held sufficient to warrant the jury’s finding for the plaintiff. Brown v. Brown, 2 Jur. ,255.
A defendant having a claim against the plaintiff, the latter, at the foot of his bill, acknowledged the debt as follows :—“By Mr. Lacey’s bill.”—leaving a blank for the amount. He then wrote below, “ Agreeably-to the request above, I send you my bill, which I will thank you to peruse, correct, and favor me with a bill for the balance.” Held, sufficient. Waller v. Lacy, 1 Scott, N. R. 186; 1 Man. & G. 58; 8 Bowl. P. C. 563; 4 Jur. 435. See Waugh v. Cope, 6 Mee. & W. 824. So an absolute promise in writing to pay an amount when ascertained is good ¡ even when coupled with extrin *713 sic parol evidence as to the amount. Cheslyn v. Dalby, 4 You. & C. 238. “ 1 have received the articles, which together with the cash overpaid on the settlement of your account amounts to £80 7s., which sum I will pay in two years.”—Held, first, that it was evidence of an account stated of debts, which would becozne due in two years, so as to defeat a plea of the statute of limitations, in an action brought within eight years afterwards. Wheatly v. Williams, 1 Mee. & W. 533. Tyr. & G. 1043.

When part payment is sufficient

Where a specific sfum of money is due, the mere fact of the payment of a less suzn is some evidence of a part payment to take a debt out of the statute, Burn & Bolton, 15 Law J. N. S., C. P. 97; but not if these two admitted demands then due, arzd it is doubtful to which the payment was meant to apply, id. per Tizidal ch. Words used at the time of making a payment qualify it, but it is for the jury to judge of the truth of a statemezit accompanying the admission of a previous payment. 17 L. J. Exch. 357. Nor will such part payment avail, «unless it be made under such circumstances as warrazit a jury in inferring a promise to pay the residue. Wainman v. Kynzman, 1 Exch. R. 118; 16 L. I., Exch. 232. A payment of interest within six years by one of several joint contractors will take the debt out of the statute of limitations as against all. Wyatt v. Hodson, 8 Bing. 209; 1 M. & Scott 242. An unsigned written acknowledgment by the defendant, of a payment made by him will avoid the statute of limitations. Cleave v. Jones, (in error) 15 Jur. 5, 15. 20 L. J. Exoh. 238. So would a simple entry of partial payment in an account-book of the defendant, id. Sembla. a verbal acknowledgznent of part payment would also be sufficient, id.

 Willoughby v. Comstock, 3 Hill 389. But a new trial will be granted for the mis-direction of the Judge, although the evidence may have Warranted the verdict found, where the chances are equal, that the verdict resulted from that mis-direction. Wardell v. Hughs, 3 Wen. 418. See also Cowon & Hill’s notes, 475, and authorities there cited.

 Hunt v. Rausmanier’s adm’rs, 8 Wheat. 174: Cond. 400, S. C. 1 Peters Sup. C. R. 1, S. C. 2 Mason 342. Chaplin v. Layton, 6 Page 189. S. C. 18 Wen. 407, Broom’s Maxims, 3d ed. 185. McCarty v. Decaix, 2 Russ. & My. 614: Cond. 192. In the last case the husband obtained a divorce from his wife, and believing it to be legal when it was not, renounced his title to his wife’s property, supposing he had no lawful title thereto; he also was under a mistake of fact, as to the amount of the property renounced, which the other party knew, but withheld the information which he should have disclosed; the relief was granted on mixed considerations. See An. Ch. Bigest, by Waterman, tit. Mistake of Law.

 There seems to be a distinction- between mere ignorance of law, which is incapable of proof, and a mistake of law, which can be established by evidence. Laurence v. Reaubin, 2 Bail Law, R. 623; and Senator Paige in Chaplin v. Laytin, 18 Wen. 423, adopted this distinction; see Hall v. Reed, 2 Barb. Ch. 505. t
But if a party, acting in ignorance of a plain and settled principle of law is induced to give up a portion of his indisputable property to another, under the name of compromise, the court of equity will relieve him from the effect of his mistake. Naylor v. Winch, 1 Sim. & Stu. 565; but where a compromise of a doubtful claim is entered into fairly, with due deliberation, and upon consideration, the court will not enquire into the adequacy of the con «deration, id. 555. 1