By the Court,

Nelson, J.
Many questions were raised and urged upon our consideration by the counsel for the prisoner on the argument, which we cannot entertain or determine-^such as that the verdict of the jury is against law and evidence, if the charge of the court be correct; and that the court erred in commenting upon the testimony or facts in the case. These are questions that cannot be raised on the bill of exceptions, or be brought before us for review, according to established practice. By the statute, 2 R. S. 736, § 21, on the trial of an indictment, exceptions, to any decision of the court may be made by the defendant, in the same cases and *manner provided by law in civil cases. In civil cases it has long been settled, that the bill of exceptions does not draw the whole matter disclosed on the trial of a cause again into discussion or examination ; and that the party excepting must lay his finger on the points which may arise, either in admitting or rejecting evidence, or in relation to questions of law arising from facts not denied, in which either party was overruled by the court. 1 Bacon, 528, and cases cited, Phila. ed. 1811. 5 Johns. R. 467. 8 id. 507. 1 Cowen, 639. 9 Wendell, 296.
This proceeding brings up for review only questions of law, and no more of the evidence should encumber the record than sufficient to present them to the court. Every thing is surplusage, and would be stricken out on a proper application. Relief from verdicts which are against law and evidence in civil cases must be sought by pursuing a different remedy, unless there has been some error in the ruling of the court upon a question of law. So it must be in criminal cases. What that remedy is, need not now be noticed. It would be extremely inconvenient, if not intolerable, to be obliged to examine in this way any pretended errors of the court, in their commentaries upon the facts ; for it is obvious, without the entire summing up to the jury, it would be impossible for this court to determine, with intelligence or accuracy, whether any errors had been committed in any part of it. That could only lie determined by an examination of every part of the charge of the court. We therefore lay out of this case, in the consideration of it, all that has been urged in regard to the errors *564 of the judge in commenting upon the facts, and also those of the jury, which will greatly diminish the number of points matérial to be noticed, and will bring us to the consideration of the questions—
1. Was the delivery of the property on board the steamboat-Boston before the false pretences of the prisoner, so complete in judgment of law as to repel and disprove the allegation in the indictment, that it was delivered to him upon the faith of them ?
2. Is it necessary to prove all the pretences laid in the indictment as having induced the delivery of the goods, and *which are negatived, to be false, in order to authorize a conviction ? and
3. Must the jury be satisfied that the pretences proved to be false, were the sole and only inducement to the credit or delivery ?
1. We entertain no doubt that Cochran, Addoms & Co. had a right to resume the actual possession and control of the goods at the time they became alarmed about the credit of the prisoner, and held the interview with him in which he put forth the false pretences charged ; and having asserted such a determination, the goods should be deemed in judgment of law under their control at the time. The delivery was incomplete and conditional; the invoice had not been delivered, nor the security for the purchase money given, and the receipt from the master of the boat, or bill of lading, was still in their hands. For some purposes, the property undoubtedly should be considered delivered and at the risk of the vendee, but there is nothing in this view incompatible with the right of the vendors to resume the possession of it; for after they had thus done and put an end to the conditional delivery, there would no doubt be an end of the risk. It was not the intent or understanding of either party that the property in the goods should pass, until the security for them was given, as is obvious from the whole transaction. It is well settled that if the delivery be accompanied with a declaration on the part of the seller, that he should not consider the goods as sold until the security be given, the sale is conditional, and the property does not pass by delivery as between the original parties ; though as to subsequent bona fide purchasers of the vendee it would be different. 8 Wendell, 256. 6 id. 77. 2 Kent’s Comm. 497. We consider this such a sale, and the circumstances attending the delivery equivalent to such a declaration.
2. The case of The People v. Stone, 9 Wendell, 182, decides that it is necessary for the pleader, in drawing an indictment under this statute, to negative specifically all the false pretences relied on to sustain the indictment and convict the accused. The same point had before been determined in the case of The King v. Perrott, 2 Maule & Selw. 379. Neither of these cases, *however, decide that it is indispensable to establish by proof the falsity of each pretence thus negatived ; but are authorities, I think, for a contrary conclusion.
The necessity of the averment negativing each false pretence relied on, is put mainly upon the ground that the prisoner is entitled to notice of the specific charges expected to be proved against him ; and an indictment for perjury is referred to as closely analogous, where it is well settled that each assignment of perjury charged and expected to be proved must be specifically negatived. If we carry out the analogy to the point in question, it will be decisive of it; for it is clear, that it is not material to prove all the assignments of perjury in a given count, if it contains more than one, and that proof of one is sufficient to convict. We apprehend it would be difficult to distinguish in this respect between the two cases upon any sound principle, or to discover wherein *566 injustice will be done by applying substantially that rule in indictments of perjury to this case.
It was said, on the argument by the counsel for the prisoner, that the indictment shows that the grand jury found the goods were trusted upon the faith of all the false pretences set forth, and that without the existence and falsehood of all, we must presume it would not have been found ; and to permit a conviction upon proof only of a part of them, would be a conviction of an offence different from the one contained in the indictment. These reasons were urged against the position that part of the false pretences need only be proved, if sufficient in themselves to convict. If all were material to constitute the offence charged, the argument would be sound, and it would follow that all should be proved, else a conviction would be unjust; but the position that part need only be proved, assumes that they may and must be sufficient in law to bring the case within the statute ; and then I am unable to discover how it is possible injustice can be done to the prisoner if convicted.
We all know that in indictments as in declarations, not only many counts are often added embracing the same offence, and that two or more distinct of-fences are sometimes set forth in the same count, from abundant caution; but the proof of *one always authorizes the conviction. So in this case. We can perceive no objection to the grand jury setting out any number of false pretences, of which there may be any evidence before them for greater caution, negativing each specifically ; and if it should turn out on the traverse, that there were more laid than were true, or material to establish the offence, they may be rejected as surplusage, and need not be proved. The result would not show that the prisoner was convicted of an of-fence, different from the one charged by the grand jury, but that the grand jury had found in the indictment more matter than was essential to constitute the offence. The prisoner would have notice of the offence charged against him, and something more. Surplusage will not vitiate any pleading; it may be expunged on a proper application. Le Blanc, J., in The King v. Perrott, says, speaking of the point in question, “ It is perfectly true, that the indictment might negative one by one every one of the false pretences, and that that would not vitiate, though SQtne were true.” See also 2 Russell, 310, 11, where the same position is substantially stated; and Rex v. Hempstead, Russ. & Ryan, 344. So far as this case is concerned, we might stop here, because from the above view all the principles of law decided by the court below and excepted to, and which can be reviewed, were correctly determined.
There can be no doubt the false pretences set forth in the indictment, and which were proved on the trial, were abundant to justify the verdict of the jury, if made with a fraudulent intent. The prisoner represented himself to be in successful business as a merchant in Boston, worth from $9000 to $10,000 over and above all his debts, and in easy and unembarrassed circumstances ; and to give weight and strength to this assertion of ability, he represented that he never had a note protested in his life, and had then no endorsers ; and had never endorsed himself but one note, which was more than a year before; whereas, in truth, he had been a bankrupt for years, and was so at that time to the amount of $70,000 or $80,000, and unable, according to his own confession, to pay twenty or twenty-five cents in the dollar, and made these false representations of his situation for the express purpose of obtaining the goods in question, knowing he could not have obtained *them had he stated the truth. With the confidence which Cochran, Addoms & Co. had in the prisoner, and of which he could not be ignorant, the false pretences *567 thus put forth were well calculated to impose upon them, and accomplish the cheat and fraud intended. There can be no doubt the case comes within the mischief intended to be met and punished by the statute, 12 Johns. R. 292; 3 T. R. 98; 1 Wheeler’s Cr. Rec. 466, 7, per Golden, mayor. The statute extends to every case where a party has obtained money or goods by falsely representing himself to be in a situation in which he is not, or by falsely representing any occurrence that had not happened, to which persons of ordinary caution might give credit. The ingredients of the offence are, obtaining goods by false pretences, and with an intent to defraud. That they were so obtained in this case cannot be doubted.
3. From the view we entertain of the law on this point, the case was put to the jury by the court below more favorably to the prisoner than can be sustained. The recorder charged, that if some of the pretences in the indictment were false, and the goods were obtained solely by means of those pretences, they, Cochran, Addoms & Co. believing them to be true, the prisoner was guilty.
Now we understand the rule to be, that if the pretences proved to be false had a material effect in procuring the credit, or inducing the party defrauded to give up his property, it is sufficient. All the opinions in the case of the King v. Perrott concede this principle, for they suppose the pretences may be, what is most usually the fact, a mixture of truth and falsehood, and decide that the false pretences should be negatived, that the others need not be, and that upon proof of the false ones, a conviction might or would follow. Yet, as stated on the argument by one of the counsel for the people, upon the rule contended for here, i. e. that the false pretences must be the sole and only inducement to the credit or delivery of the property, there could have been no conviction, because the pretences which were tgie undoubtedly had some influence. If part of the pretences are true, and such is the fact probably in ninety-nine cases in one hundred, how can the jury believe that the goods were obtained solely by means of the false *ones ? and if not, they cannot convict; and yet it must be obvious to all, that the most flagrant offences of the kind may be, and usually are, of this mixed character—mingling a portion of truth with the false representations, with the view to give to them greater currency and effect. The position that the falsehood had a material effect upon the person defrauded in procuring the property, necessarily implies that without it the object of the felon would have failed ; he could not have obtained it; at least, we are disposed to require the false pretense, or pretences to be so material, that without the existence of their influence upon the mind of the person defrauded, he would not have parted with the property ; and if so, the effect is equally as injurious, and the offence as great, as if they had been the sole and only inducement in the case. In reason, therefore, as well as upon authority, the offence would fall within the statute.
Again : the proposition, which we think cannot be doubted, that, part of the false pretences laid in the indictment may be proved, and if sufficient, will justify a conviction of the prisoner, involves the converse of the principle against which we are contending; for the position supposes the existence of other pretences either true or false in the case, which need not be proved ; and if so, it is impossible to say that the goods were obtained solely by means of those proved. It may be urged that those set forth and not proved may be presumed not to have existed, and therefore were not a material ingredient in inducing the credit. This remark is wholly inapplicable to the pretences that are true, and none of the cases in which the rule is asserted put it upon that ground, but concede or assume the contrary. Lord Ellenborough, in The King v. Perrott, *569 speaking of the necessity of negativing the false pretences laid in the indictment, says, that the rule, as it has been derived from cases of a mixed nature, where part is true and part false, has introduced a course of separating by specific averment all that which is meant to be relied on as fálse, thereby clearly conceding that part of the pretences which induced the credit or delivery of the > goods need not be negatived, and of course need not be proved to be false on the trial. Le Blanc, J. in the same case says, it should *be stated in the indictment, which (pretences) are true, and which false, in order to apprise the defendant of the particular branch of the charge meant to be insisted on. Bayley, J., says, if falsehood be an ingredient contributing to the obtaining of the money, that will be sufficient.
Upon the whole, after a careful examination and consideration of the bill of exceptions in this case, and all the questions raised upon it, we are compelled to come to the conclusion, that no rule of law has been violated against the prisoner, and that he has been rightfully convicted; and we therefore direct that the indictment, bill of exceptions, and all proceedings be remitted to the court below, to the end that judgment be rendered against him. 2 R. S. 741, § 25.