.UTICA,
August, 1829.

Purdy
v.
Austin.

## Purdy vs. Austin.

Error from the Yew-York common pleas. Austin sued Purdy in the common pleas to recover for work, labor and services performed by the plaintiff as a *cartman* for the plaintiff, a *house-builder*, or contractor for the building of houses, &c. The declaration besides the count for work, &c. contained the usual money counts. The defendant pleaded the general issue and the statute of limitations. The plaintiff replied a new promise. The cause was referred, the bill of particulars or items containing 150 folios. A report was made by the referees in favor of the plaintiff for $213,63. A motion was made to the common pleas to set aside the report, which was heard on a statement made by the referees, (accompanying their report) containing their views of the evidence and of the law of the case, and affidavits on both sides. The motion was denied, but the court ordered the report and all the papers brought before them to be attached to the record, to be removed into the court should the defendant think proper to prosecute a writ of error. In addition there was a stipulation of the parties, that such papers should be sent up to this court. A writ of error was sued out.

The suit was commenced in March, 1827; the last item in the bill of particulars is of the date of 16th August, 1820. From the statement and affidavits it appears that the plaintiff was employed by the defendant as a *cartman* for several years, and particularly during the years 1818 and 1819. He was engaged in the defendant's employment for 18 months in the business of carting. The principal question, however, arises upon the evidence of a new promise, which depends upon the testimony of a single witness. His testimony is detailed in the affidavit of the attorney for the defendant below

The acknowledgment of a defendant to take a case out of the operation of the statute of limitations, must be an unequivocal and positive recognition of a subsisting claim in favor of the plaintiff; it must be an admission of a previous subsisting debt which he is liable and willing to pay; and must not be accompanied by circumstances repelling the presumption of a promise to pay the debt. When a defendant on an account being presented to him after looking at it, threw it down in a passion and said "I owe him (the plaintiff) no such money," or asked, "I owe him so much money as that? Why did he not pre

sent the bill himself?" and added that he never had a bill from him, that he would not settle with any one but him, that he did not owe him any thing, or any thing worth mentioning; that he had paid him a great deal of money, a horse and the use of a house, and appeared much surprized and signified that he had paid the plaintiff all his work amounted to, (the account being for work alleged to be done.) *It was held*, that the declarations of the defendant instead of amounting to a recognition of a subsisting demand, were a denial of the pretended claim of the plaintiff.

and in the statement of 'the referees. The attorney represents him as saying, that about a year and a half before the reference, he was furnished by the plaintiff with an account, and requested to present it to the defendant; that he did so ; "that the defendant looked at it, and then threw it down in a passion,·and said, 'I owe him so much money as that ? Why did he not present the bill himself? I never had a bill from Austin. I won't settle with any one but him.' On being cross-examined, he testified that at the same time Purdy said he did not owe him any thing, that he had paid him a great deal of money—a horse and certain rent; that he seemed much surprised at the bill, and signified that he had paid him all his work amounted to ; that all this conversation took place at the same time." In the statement of the referees, this witness·is represented as having testified that, on presenting the account, Purdy said " that he owed Austin no such money ; that he asked why Austin did not present the account himself, and said he had never had any account from Austin ; that he would settle with no one but Austin ; and that he had paid Austin a good deal of money ; he had also paid him by a horse sold, and also by rent of a house ; and he did not believe he owed him any thing, or any thing worth mentioning."

*J. C. Barker & J. Anthon*, for plaintiff in error, cited 18 Johns. R. 511; 6 Johns. C. R. 290 ; 11 Serg & Rawle, 16 ; 12 id. 396.

*E. T. Pinckney & J. W. Gerard*, for defendant, cited 4 Esp. N. P. Rep. 46 ; 16 Johns. R. 330 ; Cowper, 548 ; 5 Burr. 2630 ; Peake's N. P. Cases, 93 ; 2 T. R. 762 ; 3 Esp. N. P, Rep. 157 ; 5 Maule & Sel. 75 ; 6 Johns. R. 267 ; 10 id. 35.

*By the Court*, Marcy, J. The statement of the referees was regarded by the court below as exhibiting the facts proved on the hearing. By this statement no other question raised in the cause is presented but that which relates to the statute of limitations.

This statute has been looked upon in times past with disfavor by the courts in England, and their example has been too generally followed in this country. Construction formerly went far towards depriving defendants of all the benefits designed for them by it. A different and better view of this salutary statute has been since taken, and a more correct and liberal construction is now given to it. Defences under it are not now regarded, as they once were, discreditable, or at least are not so viewed to the same extent as formerly. It is assuming, as it was intended it should always have had, the character of a " *statute of repose.*" If the more recent decisions in relation to the effect of acknowledgements are to be sustained, defendants may speak of dormant claims preferred against them without necessarily loosing the benefits of this law.

As courts have been latterly receding from the positions taken by them in the construction of this act, and as we regard this movement as correct, it will be unnecessary to look at any but the latest decisions for authorities upon the present case.

A demand to which the statute applies is as entirely barred as one from which a debtor has been discharged under an insolvent or bankrupt law. The pre-existing moral duty is no stronger in the one case than in the other ; but a demand barred by such a discharge, cannot be revived without an express promise to pay. This court, in the case of *Sands* v. *Gelston*, (15 Johns. Rep. 511,) considered a debt to which infancy is a bar, or from which a debtor has been discharged under an insolvent law, in the same situation as a debt barred by the statute of limitation. It would seem, therefore, to be reasonable that as much should be required to give vitality to the one as to the other. The court did not, however, propose to adopt the same rule of construction in relation to the acknowledgments of debts barred by an insolvent discharge, as that which had been applied to debts barred by the statute of limitations, nor did they feel at liberty, considering the decisions made here and elsewhere, to require as much to revive a debt barred by the statute as one

UTICA,
August, 1829.

Purdy
v.
Austin.

barred by an insolvent discharge. We do not mean in this case to go farther than this court has gone on other occasions; but I have alluded to the difference (in relation to what is required to receive them by way of acknowledgments) between a debt barred by a discharge under an insolvent law and one within the statute of limitations with a view to shew that we should not hesitate to recede quite as far as this court has done in any case from these decisions, which have gone a great way towards overthrowing that statute.

The unqualified and unconditional acknowledgment of a debt, made by a party within six years before suit brought, is adjudged in law to imply a promise to pay; but an acknowledgment of its original justice, without recognizing its present existence, is not sufficient. The language used by the party is to be interpreted according to the meaning and intention of the speaker; and any thing going to negative a promise, is to be regarded as qualifying every other expression used by him. (15 John. Rep. 519. 2 Washington's C. C. 514. 11 Wheaton, 309.)

The general doctrine on this subject, as laid down by the supreme court of the United States in the case of *Bell* v. *Morrison*, (1 Peters' U. S. Rep. 351,) is, that if there be no express promise, and one is to be raised by implication of law from an acknowledgment, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and *willing* to pay. If the accompanying circumstances repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences which may affect different minds in different ways, they ought not to go to the jury as evidence of a new promise to revive the cause of action. To allow them to be submitted to a jury for that purpose would, according to the apprehensions of that court, open all the mischiefs against which the statute was intended to guard innocent persons; and expose them to the dangers of being entrapped in careless conversations and betrayed by perjuries. (1 Peters' U. S. Rep. 351.)

These are the general rules of interpreting and construing acknowledgments in regard to reviving demands barred by

the statute of limitations.   Let them be applied to the case before us.   The testimony on this point is brief.   It is that of a single witness, and relates to what passed at a single inter- view.   When the plaintiff's bill was presented by his agent to the defendant, he threw it down in a passion, and said, as the referees state the evidence, he " owed the plaintiff no such money ; " or, as it is detailed in the affidavit, he asked, " I owe him so much money ? "   He also asked why the defendant did not present the account himself.   He said he had never had a bill from him, and would settle with no one but him. On his cross-examination, the witness represented the defend- ant as saying at the same time that he did not owe the plaintiff any thing, or any thing worth mentioning ; that he had paid him a good deal of money ; had paid him by a horse sold, and also by rent of a house.   These declarations of the party were accompanied by others, not noticed in the state- ment of the referees, but alluded to by the judge who gave the opinion of the court below, and which I think are not to be disregarded, because they somewhat qualify those expres- sions of the defendant which have been construed into a di- rect acknowledgment of the plaintiff's debt.   The witness further stated that the defendant seemed to be surprised at the bill, and signified that he had paid the plaintiff all his work amounted to.

Do these declarations, of the defendant, taken altogether, fairly import an acknowledgment of a subsisting demand that he was liable and willing to pay ?   Are they not accompanied with circumstances that repel the presumption of a promise to pay ?   He expressly stated that he did not owe the plaintiff any thing, or any thing worth mentioning.   He signified to the witness that he had paid the plaintiff all that his work amounted to, and stated the manner of payment.   To my mind, the tenor and purport of the whole conversation was a denial, by no means equivocal, of the pretended claim of the plaintiff.   While I entertain a high respect for the learned judge who gave the opinion of the court below in this cause, I am obliged to dissent from his interpretation of the defendant's language.   I can hardly understand from the defendant's ex- pression that he owed " *no such money*," taken in connection

with his other declarations, that he admitted he owed *some-thing* to the plaintiff. I cannot satisfactorily infer, as the learned judge did, that the defendant by asking the question, "Why does not the plaintiff present the bill himself"? and by remarking, that "he would settle with no one but him," he admitted that the plaintiff has some claim to present—that there was some debt due to be settled.

I regard these expressions, and the others used by the defendant, to adopt the language of Mr. Justice Story in the case of *Bell* v. *Morrison*, as "equivocal, vague and indeterminate, leading to no certain conclusions, but at best to probable inferences, which may affect different minds in different ways." If there is any certainty about them, and any satisfactory inference to be drawn from them, it is that which the plaintiff's agent and witness drew, that the defendant thereby signified that he had paid all he owed for the labor charged in the bill.

The acknowledgment of the defendant certainly does not amount to an unequivocal and positive recognition of a subsisting claim in favor of the plaintiff; and we cannot, in my opinion, sustain the judgment below without abandoning some of the positions that I have before laid down as well established by the late decisions on this subject, and going back to those which have been repudiated and censured as effecting almost a virtual repeal of the statute of limitations.

Judgment reversed.